The opinion of the court was delivered by
Nevius, J.
By the sixth section of the defendant’s charter, passed the 24th of February 1806, it is provided that the company, “ shall form an artificial road, not less than twenty-eight feet in breadth, and shall cause good and sufficient bridges to be erected, where necessary on said road, not less than twenty feet in breadth, which road and bridges shall be kept in good and sufficient repair by the company, and in case they are not so kept *324 the corporation or any of its officers shall be liable to be proceeded against as in cases of overseers of the highway for neglect of duty. And that wherever the road is raised so much at the margin or sides of the travelling path as to render carriages liable to overset, the company shall cause a sufficient railing to be erected and maintained, so as to prevent horses and carriages from running off.”
It appears from the case presented, that on the 18 th of November 1841, the plaintiff was thrown from the abutment of a bridge on the defendants’ road where the Morris Canal intersects it, and received the injury complained of. That the’road over the abutment was elevated and not protected by any fence or barrier, and that the bridge and abutment were only sixteen feet in breadth. That the accident was occasioned by the darkness of the night, the narrowness of the road and the want of a fence or. barrier on the margin of the abutment.
One other fact in the ease it is important to notice. When the defendants were incorporated, no bridge was necessary in this part of their road, but became so afterwards by reason of the construction of “ the Morris Canal,” which was made by another company incorporated in 1824, who were required by their charter, at their own proper expense, to make good and sufficient bridges across said canal and keep the same in repair.
The injury sustained by the plaintiff was occasioned by being precipitated from the abutment of the bridge, at the point of intersection of the canal and road. The road over the abutment was not of the width, nor was it protected in the manner prescribed by law and the injury was occasioned by these defects. Upon this case the question is fairly presented — Has the plaintiff a right of action against the defendants for this injury ?
The law made it the duty of the defendants to make this road in the manner prescribed, and to keep it in proper repair, and for the neglect to perform this duty they are liable at common law to any person who may be aggrieved by such neglect. It is true their charter makes them liable to be proceeded against as in case of overseers of the highway, for neglect of duty, that is by indictment in certain cases or in other cases by complaint of three inhabitants of the state, being freeholders. But this does *325 not take away, or absolve them from their common law liability. They may be punished for the public injury arising from their neglect, but are still bound to respond in a private action for a private injury arising from the same cause. Townsend v. Susquehanna Turnpike Company, 6 Johns. R. 90. In the case of The Freeholders of Sussex v. Strader, decided in this court, 3 Har. R. 108, it was adj udged that a private action would not lie against the county for neglect to repair bridges and highways. But that case differs from this, as the defendants there were a public corporation and their duty a public duty. The Chief Justice in that case says, “ the liability of toll bridge, rail road and turnpike companies, to respond in damages to individuals, who may be delayed or injured while travelling on such roads or bridges, rests upon different principles. Though they are corporations of a public character and their roads are public highways and though they owe certain duties to the public, for the neglect of which they may be indicted, yet as between them and the individuals who travel upon their roads, those corporations are quasi common carriers. They receive a toll or compensation and are bound to furnish passengers with safe roads.”
The plaintiff therefore is entitled to his action for the injury sustained, but the defendants further insist that it should be brought against the Morris Canal and Banking Company, as it was their duty by law to erect and maintain this bridge and abutment. It is true that the law has imposed this duty upon that company, but it is not less the duty of the defendants to see that it is performed, so long as they profess to keep up and use their road as a public highway, and take toll for travelling on the same. The canal company may be liable to the defendants for neglecting their duty, but this will not exempt the latter from liability to the traveller who is injured by such neglect. The defendants are the owners of the road, and claim and receive toll from persons who pass upon it, and it is their duty to see that it is in good repair and safe condition, and if they neglect this duty, they must answer for it to the injured party.
Another objection which has been urged against the plaintiff's claim is that he paid no toll to the defendants. The answer to this is, that he was a passenger in the carriage of another person who did pay toll.
*326 We are all of opinion that the action is rightly brought and that the court of common pleas erred in nonsuiting the plaintiff; and that the judgment of nonsuit should be set aside and the cause remanded to that court to be proceeded in according to law.
Judgment reversed and cause remanded.
Cited in Brokaw v. N. J. R. R. & Tr. Co., 3 Vr. 330.